IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMOJI COMPANY GmbH,<br><br>　　　Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>　　　Defendants. | Case No.: 21-cv-2942<br><br>Judge Gary Feinerman |

**PLAINTIFF'S RESPONSE TO DEFENDANT NO. 152 "YHENKO"'S
MOTION TO DISMISS**

Plaintiff, KTM AG, ("Plaintiff"), responds to Defendant No. 152 "Yhenko"'s Motion to Dismiss for Failure to State a Claim and Deny the Preliminary Injunction ("Motion") [Dkt. No. 49] as follows:

I.　INTRODUCTION

The Motion to Dismiss filed by Defendant No. 152 "Yhenko" (hereinafter referred to as "Defendant") alleges that the Court does not have personal jurisdiction over the Defendant and therefore the Preliminary Injunction against it should be vacated.

Defendant seeks to evade the consequences for infringing Plaintiff's registered EMOJI trademarks through the offer for sale of products to Illinois residents through Defendant's e-commence store on the Amazon.com, Inc. ("Amazon") platform. Defendant's argument that this Court lacks personal jurisdiction over Defendant fails because Defendant has reached out to Illinois residents by affirmatively authorizing sales to United States consumers and then offering for sale, selling and shipping infringing product to Illinois. As a result, Defendant's Motion should

be denied.

## II. ARGUMENT

A. <u>Personal Jurisdiction is Proper Since Defendant Targeted and Reached Out to Do Business with Illinois Residents</u>

1. <u>Legal Authority Regarding Personal Jurisdiction</u>

Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See Curry v. Revolution Labs., LLC,* 949 F.3d 385, 392-93 (7th Cir. 2020); *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008).

In *Illinois v. Hemi Grp. LLC*, the Seventh Circuit explained that, "Hemi stood ready and willing to do business with Illinois residents." 622 F.3d 754, 757-58 (7th Cir. 2009). "It is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois that justify exercising personal jurisdiction over Hemi in Illinois." *Id*. at 758. As such, specific jurisdiction is proper where a company "h[olds] itself out as open to do business with every state" and is "ready and willing to do business with [that state's] residents." *Id*.

Following *Hemi*, the Seventh Circuit in *Curry v. Revolution Labs., LLC* determined that personal jurisdiction was proper over non-resident e-commerce store operators:

> We are satisfied that Revolution has formed sufficient minimum contacts with Illinois. Like Hemi, Revolution sells its products only online through its website and third-party websites. Revolution's interactive website for the sale of its products requires the customer to select a shipping address. Illinois is among the "ship-to" options from which the customer must choose. Illinois residents purchasing Revolution's products also receive an email from Revolution thanking them for their business, confirming their order, and listing the Illinois shipping address.

2

949 F.3d at 399. Under this precedent, Illinois courts have consistently exercised personal jurisdiction over non-resident e-commerce store operators. *See, e.g., e.g., Mori Lee v. Partnerships*, No. 19-cv-7555 (N.D. Ill. May 14, 2020) (Docket No. 60) (Kennelly, J.); *Volkswagen AG v. iman365-usa,* No. 18-cv-06611, 2020 U.S. Dist. LEXIS 34218, at *11 (N.D. Ill. Feb. 28, 2020); *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d 897,909 (N.D. Ill. 2015) (same); *Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (same); *see also*, *Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, 2010 WL 4877708, at *7 (N.D. Ill. Nov. 23, 2010) ("As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant.").

2. <u>Defendant's Intentional Actions Targeted Illinois</u>

Defendant "stood ready and willing to do business with Illinois residents" by creating and operating its interactive e-commerce store through which infringing products could be purchased. *Hemi Grp*, 622 F.3d at 758; *Curry,* 949 F.3d at 399. Illinois residents purchasing Defendant's products are shown a webpage. *See Curry*, 949 F.3d at 399. Defendant's reaching out and expressly electing to do business with the residents of all fifty states, including Illinois, the fifth most populous state, establishes personal jurisdiction. *Hemi Grp*, 622 F.3d at 758; *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010).

It is undisputed that Defendant advertised and offered to ship the infringing product to Illinois. Additionally, Defendant's e-commerce store also establishes that Defendant was ready and willing to ship infringing products to the United States, including Illinois. Courts in this district have regularly found jurisdiction over China-based e-commerce stores based solely on a single offer for sale of infringing product. *See, Monster Energy Co.*, 136 F. Supp. 3d at 909

("defendants' offers to sell counterfeit Monster Energy Products on their Internet stores constitute tortious activity committed in Illinois sufficient to establish personal jurisdiction"); *Christian Dior Couture, S.A.*, 2015 U.S. Dist. LEXIS 158225 at *6 (same).

Defendant has established and operated a commercial, interactive online store through which U.S. customers could purchase its products, thus holding itself out as open to do business with every state, including Illinois. *See Volkswagen AG,* 2020 U.S. Dist. LEXIS 34218, at *9 (*citing Hemi Grp. LLC*, 622 F.3d at 758) (online purchases were not unilateral actions by customers—which generally would not satisfy the "minimum contact" requirement—where the defendant operated a commercial website open to business with the forum state); *see also*, *Valtech, LLC v. 18th Ave. Toys Ltd.,* 2015 U.S. Dist. LEXIS 17138, at *12 (N.D. Ill. Feb. 12, 2015).

As such, Defendant's offer for sale of infringing products supports the jurisdiction of this Court over this matter.

B.  A Preliminary Injunction Should be Entered Against the Defendant

A preliminary injunction may be issued upon a showing that: "(1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in Plaintiffs' favor; and (4) the public interest will not be disserved by the injunction." *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1076 (N.D. Ill. 1996).

1. Plaintiff Is Likely Succeed on Its Trademark Infringement and Counterfeiting Claim

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale,

distribution, or advertising of any goods … which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, a plaintiff must show (1) its mark is distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the trademark; and (3) Defendant's use of the trademark causes a likelihood of confusion as to the origin or sponsorship of Defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005). Plaintiff satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Regarding the first two elements, Plaintiff's EMOJI Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The EMOJI Trademarks has been continuously used. Santiago Declaration at ¶¶ 6-7. The registrations for the EMOJI Trademarks are valid, subsisting, and in full force and effect. *Id*. at ¶ 5. The registrations for the EMOJI Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the EMOJI Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendant to use either of the EMOJI Trademarks, and Defendant is not an authorized retailer of genuine EMOJI Products. Reiter Declaration at ¶ 5.

Plaintiff satisfies the third factor, as well. The Seventh Circuit has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *Eli Lilly*, 233 F.3d at 461-462. Although no one factor is decisive, the similarity of the marks, the

intent of the defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

In this case, Plaintiff plainly satisfies the likelihood of confusion test. The Defendant is selling Counterfeit EMOJI Products using counterfeit marks identical to the EMOJI Trademarks. As such, the first and second likelihood of confusion factors weigh heavily in favor of Plaintiff.

Plaintiff also satisfies the third factor, namely, the area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties used the same channels of commerce, targeted the same general audience, and/or used similar marketing procedures. *Id*. Here, both Plaintiff and Defendant show the same products using the EMOJI Trademarks to the same consumers. See Exhibit 1 to the Santiago Declaration. Thus, because Defendant targets the same consumers as Plaintiff, this factor also weighs in favor of Plaintiff.

Regarding the fourth factor, degree of consumer care, potential consumers purchasing EMOJI Products are not restricted to a certain specialized, sophisticated group of people. Rather, the consumer base is a diverse group of people. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001). As such, EMOJI brand consumers are very likely to be confused, so this factor favors Plaintiff.

Due to their long-standing use and wide acceptance by the public, the EMOJI Trademarks have become famous and associated with high quality EMOJI Products. The EMOJI

Trademarks are distinctive when applied to the EMOJI Products. The marks signify to consumers that the products come from Plaintiff and are manufactured to the highest quality standards. Thus, the fifth factor, the strength of the marks, also weighs heavily in favor of Plaintiff.

As for the sixth factor, Plaintiff does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "plaintiff need not show actual confusion in order to establish likelihood of confusion."). In this case, actual confusion can be inferred because Defendant is selling counterfeit EMOJI Products in connection with the EMOJI Trademarks. Because the goods are similar and have identical and similar uses, consumers will be confused and think that Defendant's products are genuine EMOJI Products or are sponsored or endorsed by Plaintiff. This factor weighs in favor of Plaintiff.

Regarding the seventh and final factor, Defendant is intentionally using the EMOJI Trademarks to confuse and deceive the consuming public into thinking that Defendant's Counterfeit EMOJI Products are manufactured by or emanate from Plaintiff. Defendant is purposefully attempting to benefit and trade off Plaintiff's goodwill and reputation. Therefore, the final factor regarding Defendant's intent also weighs heavily in Plaintiff's favor.

In sum, each of the seven likelihood of confusion factors weighs heavily in favor of Plaintiff, and, therefore, Plaintiff has proved that it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

3. Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim

Plaintiff is bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost*, 403 F. Supp. 2d at 684. Because the EMOJI Trademarks are registered marks, and Plaintiff has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendant (supra), a likelihood of success on the merits for Plaintiff's false designation of origin claim is also established.

4. Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim

In Illinois, courts resolve unfair competition and deceptive trade practice claims "according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* at 579. The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998). Because Plaintiff has established a likelihood of success on the merits of its trademark infringement and counterfeiting claims against Defendant (supra), and the standard is the same under Illinois law, Plaintiff has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

C.  Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also* 4 Callmann on Unfair Competition, Trademark and Monopolies § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendant's unauthorized use of the EMOJI Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Santiago Declaration at ¶¶ 11-13.

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendant's infringing activities through injunctive relief. *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994)

("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Plaintiff will suffer immediate and irreparable injury, loss, or damage if a Preliminary Injunction Order is not issued. Santiago Declaration at ¶¶ 13-14. As such, Plaintiff should be granted preliminary relief.

D.     <u>The Balancing of Harms Tips in Plaintiff's Favor</u>

As a willful infringer, Defendant is entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendant has been profiting from the sale of Counterfeit EMOJI Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that a Preliminary Injunction be entered against Defendant.

E.     <u>Issuance of the Injunction Is in the Public Interest</u>

Entry of a Preliminary Injunction is in the public interest because it will prevent consumer confusion and stop Defendant from violating federal trademark law. The public is currently under the false impression that Defendant is operating their Defendant's Internet Stores with Plaintiff's approval and endorsement. A preliminary injunction serves the public interest in

this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendant's actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendant, or as to the identity of the owner of trademarks used in connection with those goods and services. Unless Defendant's unauthorized use of the EMOJI Trademarks are enjoined, the public will continue to be confused and misled by Defendant's conduct.

For these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of a Preliminary Injunction Order is in the public interest.

III. CONCLUSION

In conclusion, for the reasons stated above, Defendant's Motion to Dismiss and Deny Plaintiff's Motion for Entry of a Preliminary Injunction should be denied and a Preliminary Injunction should be entered against Defendant.

Respectfully submitted,

Dated: August 16, 2021

By: s/Michael A. Hierl
Michael A. Hierl (Bar No. 3128021)
William B. Kalbac (Bar No. 6301771)
Robert P. McMurray (Bar No. 6324332)
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
mhierl@hsplegal.com
wkalbac@hsplegal.com
Attorneys for Plaintiff
EMOJI COMPANY GmbH

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies on August 16, 2021 that a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system.

/s/ *Michael A. Hierl*